IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

JAMES GARDNER DENNIS,

    Plaintiff,

v.                                  Civil Action No. 3:15CV603

HAROLD CLARKE,

    Defendant.

## MEMORANDUM OPINION

James Gardner Dennis, a Virginia prisoner proceeding with counsel, submitted this 42 U.S.C. § 1983 complaint. Dennis demands relief upon the following grounds:

| | |
|---|---|
| Claim One | Dennis's forced participation in the Sex Offender Residential Treatment program ("SORT") violates his rights under the Fifth Amendment. (Compl. ¶ 21, ECF No. 1.) |
| Claim Two | Dennis's forced participation in SORT violates his rights to due process because:<br>(a) it allows "Dennis to be labeled a violent sex offender," (id. ¶ 14);<br>(b) it "has the potential to cause severe changes to the time to be served on his sentence," (id.); and,<br>(c) "once an inmate is enrolled in the rehabilitation program, the inmate becomes subject to highly onerous conditions requiring [his] civil commitment after the inmate's sentence has been served" (id. ¶ 16). |

The matter is before the Court on the MOTION FOR SUMMARY JUDGMENT (ECF No. 9) filed by Harold Clarke, the Director of the Virginia Department of Corrections ("VDOC"). Dennis has responded. For the reasons set forth below, the Motion for

Summary Judgment will be granted because Dennis's claims fail as a matter of law.[1]

## I. STANDARD FOR SUMMARY JUDGMENT STANDARD

Summary judgment must be rendered "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment bears the responsibility to inform the court of the basis for the motion, and to identify the parts of the record which demonstrate the absence of a genuine issue of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the pleadings, depositions, answers to interrogatories, and admissions on file." Id. at 324 (internal

---

[1] Clark also has filed a Supplemental Motion for Judgment wherein he expands on his argument that Dennis failed to exhaust his available administrative remedies as required by 42 U.S.C. § 1997e(a). Because Dennis's claims lack merit, and it appears that a material dispute of fact exists as to whether Dennis satisfied the requirements of 42 U.S.C. § 1997e(a), the Court need not resolve that issue. Ross v. Blake, No. 15-339, 2016 WL 3128839, at *8 n.3 (U.S. June 6, 2016) ("Grievance procedures are unavailable . . . if the correctional facility's staff misled the inmate as to the existence or rules of the grievance process so as to cause the inmate to fail to exhaust such process." (quoting Davis v. Hernandez, 798 F.3d 290, 295 (5th Cir. 2015))). Accordingly, in reciting the materials submitted in support of, and in opposition to summary judgment, the Court omits those materials devoted to the issue of exhaustion.

2

quotation marks omitted). When the motion is properly supported, the nonmoving party must go beyond the pleadings and, by citing affidavits or "'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Id. (quoting former Fed. R. Civ. P. 56(c) and 56(e) (1986)).

In reviewing a summary judgment motion, the court "must draw all justifiable inferences in favor of the nonmoving party." United States v. Carolina Transformer Co., 978 F.2d 832, 835 (4th Cir. 1992) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986)). However, a mere scintilla of evidence will not preclude summary judgment. Anderson, 477 U.S. at 251 (citing Improvement Co. v. Munson, 81 U.S. (14 Wall.) 442, 448 (1872)). "'[T]here is a preliminary question for the judge, not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party . . . upon whom the onus of proof is imposed.'" Id. (quoting Munson, 81 U.S. at 448). Additionally, "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." Forsyth v. Barr, 19 F.3d 1527, 1537 (5th Cir. 1994) (quoting Skotak v. Tenneco Resins, Inc., 953 F.2d 909, 915 n.7 (5th Cir. 1992)); see Fed. R. Civ. P.

56(c)(3) ("The court need consider only the cited materials . . . .").

In support of his Motion for Summary Judgment, as pertinent here, Clarke submitted an affidavit from Marissa M. Coon, the Program Director for SORT. (Mem. Supp. Mot. Summ. J. Ex. 1 ("Coon Aff.," ECF 10-1).) In response, Dennis submitted his own affidavit. (Mem. Opp'n Mot. Summ. J. Ex. 1 ("Gardner Decl.," ECF No. 11-1).) Additionally, Dennis submitted a Psychological Evaluation And Assessment of Sexual Interest that appears to have been prepared as a defense exhibit for Dennis's criminal sentencing in 2008. (Id. Ex. 2 ("Psychological Evaluation").)

Additionally, the Court will consider the evidence offered by the parties in support of and in opposition to the Motions for Injunctive Relief filed by Dennis. Specifically, Dennis filed a Motion for Emergency Temporary Restraining Order and Motion for Preliminary Injunction (ECF No. 23) and a Second Motion for Emergency Temporary Restraining Order and Second Motion for Preliminary Injunction (ECF Nos. 28, 30.) Both these motions were denied. (See MEMORANDUM ORDER (ECF No. 25) and ORDER (ECF No. 36).) In support of those motions, Dennis has submitted his own declarations. (Mem. Supp. Mot. TRO & Prelim. Inj. Ex. 1 ("Dennis Inj. Decl.," ECF 22-1)); (Mem. Supp. Second Mot. TRO & Prelim. Inj. Ex. 1 ("Dennis TRO Decl.," ECF No. 29-1)); (Reply Ex. 1, ("Dennis TRO Supp'l Decl.," ECF No. 34-1).)

4

In opposition to the Motions for Injunctive Relief, Clarke has submitted, inter alia, an affidavit from S. Robertson, a Unit Manager at Greensville Correctional Center ("GCC"), (Def.'s Supp'l Resp. TRO Ex. 1, ("Robertson Aff.," ECF 32-1)), and the affidavit of S.R. Taylor, a nurse at GCC. (Id. Ex. 2, ("Taylor Aff.," ECF No. 32-2).)

Of course, the facts offered by any affidavit must be in the form of admissible evidence. See Fed. R. Civ. P. 56(c)(2). To meet that requirement, the statements in the affidavit or sworn declaration "must be made on personal knowledge . . . and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). Furthermore, summary judgment affidavits must "set out facts," rather than conclusions. Id.[2] Therefore, "summary judgment affidavits cannot be conclusory . . . or based upon hearsay." Evans v. Techs. Applications & Serv. Co., 80 F.3d 954, 962 (4th Cir. 1996) (citing Rohrbough v. Wyeth Labs., Inc., 916 F.2d 970, 975

---

[2] Dennis advances some specious objections to Coon's affidavit. For example, Dennis objects to Coon's description of SORT because it "actually cites almost no facts, but merely states largely irrelevant opinions and alleged aspirations of Coon as Director of the SORT Program. . . . Coon appears to be testifying as an expert as to the 'nature' of the programs, but has not been qualified as expert by this Court." (Mem. Opp'n Mot. Summ. J. 4.) Coon, as the Program Director of SORT, need not qualify as an expert prior to describing the purpose of SORT and how it functions. Lamoureaux v. Anazaohealth Corp., No. 3:03cv01382 (WIG), 2009 WL 1162875, at *2 (D. Conn. Apr. 30, 2009). No need exists for the Court to assess the efficacy of SORT and take expert testimony on that score.

5

(4th Cir. 1990); Md. Highways Contractors Ass'n v. Maryland, 933 F.2d 1246, 1252 (4th Cir. 1991)). Thus, the parties' conclusory sworn assertions will not be considered in reviewing the motion for summary judgment.[3]

In light of the foregoing principles and submissions, the following facts are established for the purposes of the Motion for Summary Judgment.

## II. SUMMARY OF PERTINENT FACTS

### B. Summary Of Pertinent Facts

#### 1. Dennis's Convictions And Referral To SORT

Dennis "was convicted by the Albemarle Circuit Court for [twenty] counts of Possession of Child Pornography, one count of Sexual Battery, and one count of Computer Use to Commit Certain Sex Offense with a Minor." (Coon Aff. ¶ 10.) Dennis asserts that he entered Alford[4] pleas to each of these offenses, and he continues to believe that he did not commit any crime. (Dennis

---

[3] For example, Dennis makes a number of hearsay statements regarding alleged inaccuracies in his "'STATIC-99,'" and with respect to his belief that participation in SORT results in classification as a sexually violent predator and civil commitment. (See, e.g., Dennis Decl. ¶ 7 ("The therapist at GCC, Mr. Fraiser, told me that the VDOC's concocted 'STATIC-99' score also falsely stated that I had not had a sexual relationship that lasted over 24 months, when in fact I was married to my second wife for over 13 years."; id. ¶ 11 ("I have been given to understand by VDOC Personnel that only sexually violent offenders are placed in the SORT program.")

[4] North Carolina v. Alford, 400 U.S. 25 (1970).

TRO Decl. ¶ 4.) The public records, however, reflect that Dennis actually pled guilty to the twenty counts of possession of child pornography. Dennis v. Jennings, No. 7:11-cv-00245, 2011 WL 6293279, at *3, *6 (W.D. Va. Dec. 13, 2011).

For purposes of sentencing, Dennis's counsel in the criminal case referred Dennis for a Psychological Evaluation and Assessment of Sexual Interest. (Psychological Evaluation 1.)[5] The Psychological Evaluation appears to have been submitted as a defense exhibit at sentencing. (Id.) The psychologist administered a "STATIC 99 . . . an instrument designed to assist in the prediction of sexual and violent recidivism for sexual offenders." (Id. at 5.) According to the psychologist, Dennis's score of 1 on the STATIC 99 "suggest[s] that Mr. Dennis is at very low risk for sexual reoffending." (Id. at 6.) On November 12, 2008, the Albemarle Circuit Court sentenced Dennis to eleven (11) years of incarceration. (Compl. ¶ 6; Answer ¶ 7.)

On July 15, 2015, Dennis was transferred from Coffeewood Correctional Center to GCC for participation in SORT. (Compl. ¶ 9; Answer ¶ 10.) At GCC, "Dennis is a security level 2 inmate." (Robertson Aff. ¶ 7.) GCC "houses inmates classified as security levels 2 and 3." (Id.)

---

[5] The Court employs the pagination assigned by CM/ECF to the Psychological Evaluation.

7

SORT "is part of the VDOC Sex Offender Services Program, whose mission is to enhance public and institutional safety by providing evidence based assessment, treatment, re-entry, and supervision services to sex offenders." (Coon Aff. ¶ 4.) "The primary goal of these programs is to help sex offenders manage their deviant thoughts and/or behaviors to reduce both sexual and non-sexual recidivism." (Id.) Coon avers that:

> Offenders who participate in sex offender treatment, including SORT, have the opportunity to learn about problems they may have had in their relationships with other people. They learn how to make better choices by taking charge of their thinking. They also learn skills to help improve and manage stress. And they learn about the issues that led to their sexual offense . . . .

(Id. ¶ 5.)

"[M]ale sexual offenders with 18 to 36 months remaining until their scheduled prison release date who are deemed to be moderate to high risk of sexual reoffending are referred to" SORT. (Id. ¶ 6.) For purposes of SORT, an individual is deemed to be a sexual offender if he was convicted of a sexual offense. (Id.) Offenders are not provided with a hearing or notice prior to being referred to SORT. (Id. ¶ 7.)

If an individual is accepted into SORT, he or she will "receive individualized assessment and treatment targeting their identified risk factors and treatment needs. Their treatment may include psychoeducation, group therapy, and/or individual

8

therapy." (Id. ¶ 8.)[6] Additionally, SORT includes "discharge planning prior to [an] offender['s] release [which] identifies areas for continued treatment based on [the offender's] progress in . . . SORT . . . and [his] identified risk factors." (Id.)

An offender has the right to refuse to participate in SORT. (Id. ¶ 9.) "But offenders who decline entry into the SORT program risk loss of good time and the ability to receive good time, and they may receive a disciplinary charge. [Nevertheless,] an offender's sentence is not increased if he refuses to participate in sex offender treatment programs." (Id.)

Participation in SORT "does not label or automatically deem an offender a" Sexually Violent Predator ("SVP").[7] (Id. ¶ 11.) "[B]eing referred to or participating in the SORT program is not

---

[6] Dennis contends that he has not received an individualized assessment and has no treatment needs. (Dennis Decl. ¶ 8.) However, when Dennis made the above statement he was not an active participant in SORT. (Dennis Inj. Decl. ¶¶ 3-4.)

[7] The pertinent statute states:

"Sexually violent predator" means any person who (i) has been convicted of a sexually violent offense, or has been charged with a sexually violent offense and is unrestorably incompetent to stand trial pursuant to § 19.2-169.3; and (ii) because of a mental abnormality or personality disorder, finds it difficult to control his predatory behavior, which makes him likely to engage in sexually violent acts.

Va. Code Ann. § 37.2-900 (West 2016).

9

related to whether an offender is subject to civil commitment as an SVP." (Id.)

Dennis submits the following evidence in protesting his assignment to SORT:

> Prior to my sentencing for which I am now incarcerated, I was examined by Jeffrey C. Fracher, Ph.D. ("Fracher"), a clinical psychologist that is a Virginia Certified Sex Offender Treatment Provider. . . . Rather than rely upon this professional assessment, . . . the VDOC determined their own "STATIC-99" score for me. The VDOC "STATIC-99" score was determined by an unknown VDOC employee that never met or interviewed me.

(Dennis Decl. ¶¶ 2-5 (paragraph numbers omitted).)

Participation in SORT requires that Dennis acknowledge having committed at least one sex offense and attest that treatment may reduce the risk of re-offending. (Dennis TRO Decl. ¶ 3.) Dennis is offended by this requirement because he does not believe that he "actually commit[ted] any crime." (Id. ¶ 4.)

Further, Dennis asserts that, to participate in SORT, he must admit to every sexual offense he has committed. The record shows that Dennis need only admit the sexual offenses of which he was convicted. Nonetheless, Dennis contends that participation in SORT offends his Fifth Amendment privilege against self-incrimination.

On April 25, 2016, at 7:35 p.m., Dennis was assaulted by another inmate while in the SORT unit at GCC. (Id. ¶ 11.) On

10

that date, inmate A. Woodson picked up a pot of boiling water and poured it on Dennis's back. (Dennis TRO Supp'l Decl. ¶ 3.) Dennis sustained first and second degree burns to a significant portion of his body. (Dennis TRO Decl. ¶ 16.) Dennis received medical care for his injuries. (See Taylor Aff. ¶¶ 4-5.) The blisters on Dennis's back have now healed. (Dennis TRO Supp'l Decl. ¶ 7.)

Based on the assault, Dennis and Woodson were placed in a Restrictive Housing Unit while VDOC staff conducted an investigation. (Robertson Aff. ¶ 6.) Dennis and Woodson were subsequently released from the Restrictive Housing Unit and are no longer housed in the same housing unit. (Id.)

### III. ANALYSIS

#### A. Fifth Amendment[8]

In Claim One, Dennis asserts that his forced participation in SORT violates his right to be free from self-incrimination. Clarke asserts that Claim One fails as a matter of law.

The Fifth Amendment "privilege has two components: incrimination and compulsion." Lile v. McKune, 224 F.3d 1175, 1179 (10th Cir. 2000), rev'd on other grounds, 536 U.S. 24 (2002). To survive summary judgment, Dennis must demonstrate

---

[8] "No person shall . . . shall be compelled in any criminal case to be a witness against himself . . . ." U.S. Const. amend. V.

11

two things: "(1) that the testimony desired by the government carried the risk of incrimination, and (2) that the penalty he suffered amounted to compulsion." United States v. Antelope, 395 F.3d 1128, 1134 (9th Cir. 2005) (citations omitted). As explained below, Dennis has not demonstrated that the information sought by the government carried any risk of incrimination.

"The Fifth Amendment privilege is only properly invoked in the face of 'a real and appreciable danger of self-incrimination.'" Id. (quoting McCoy v. Comm'r, 696 F.2d 1234, 1236 (9th Cir. 1983)). Thus, "as a general rule, . . . where there can be no further incrimination, there is no basis for the assertion of the privilege . . . . [Accordingly,] [i]f no adverse consequences can be visited upon the convicted person by reason of further testimony, then there is no further incrimination to be feared." Mitchell v. United States, 526 U.S. 314, 326 (1999).

The only evidence in the record reflects that participants in SORT are required to acknowledge having committed at least one sex offense.[9] (Dennis TRO Decl. ¶ 3.) Dennis pled guilty to

---

[9] Dennis alleges, inter alia, that participants in SORT

are *required* to submit to being hooked up to a polygraph machine and *are forced* to answer a comprehensive set of questions that inquires into their entire sexual history and requires disclosure of that entire sexual history,

12

twenty (20) counts of possession of child pornography. Because Dennis pled guilty to a score of sexual offenses, a requirement that he admit his responsibility to having committed a sex offense does not expose Dennis to any real danger of criminal incrimination. Neal v. Shimoda, 131 F.3d 818, 833 (9th Cir. 1997) (holding that a prison treatment program requiring inmates to admit guilt of the crime for which they were imprisoned did not violate the Fifth Amendment); see Minnesota v. Murphy, 465 U.S. 420, 435 n.7 (1984) (explaining that the state may compel answers "as long as it . . . eliminates the threat of incrimination"). As Dennis fails to demonstrate that his participation in SORT carries a real risk of criminal incrimination, Claim One must be dismissed.

Additionally, Dennis's Fifth Amendment claim is foreclosed by the Supreme Court's decision in Chavez v. Martinez, 538 U.S. 760 (2003). The plaintiff in Chavez alleged that he was coercively interrogated, but was never prosecuted based on that interrogation. Id. at 763-64. "A four-member plurality of the Court concluded that 'a violation of the constitutional right against self-incrimination occurs only if one has been compelled

---

which could include confessing to crimes that Dennis not only was not convicted of, but also offenses that Dennis has not even previously been charged with.

(Mem. Opp'n Summ. J. 2.) Dennis, however, fails to direct the Court to any admissible evidence that SORT actually employs such procedures.

13

to be a witness against himself in a criminal case.'" <u>Burrell v. Virginia</u>, 395 F.3d 508, 513 (4th Cir. 2005) (quoting <u>Chavez</u>, 538 U.S. at 770). Justices Souter and Breyer, though not joining the plurality, agreed that the plaintiff could not proceed on his § 1983 claim because "the text of the Fifth Amendment . . . focuses on courtroom use of a criminal defendant's compelled, self-incriminating testimony, and the core of the guarantee against compelled self-incrimination is the exclusion of such evidence." <u>Id.</u> at 513 (quoting <u>Chavez</u>, 538 U.S. at 777 (Souter, J.) (concurring in judgment)).

Dennis has not shown that any compelled testimony from his participation in SORT has been (or will be) introduced in a criminal proceeding. Therefore, for that additional reason, his Fifth Amendment claim is legally insufficient. <u>See</u> <u>Allison v. Snyder</u>, 332 F.3d 1076, 1080 (7th Cir. 2003) (rejecting similar claim based on <u>Chavez</u> and observing that the only option available for the inmate was to seek suppression of the statements at some future criminal proceeding).

For the foregoing reasons, Claim One will be dismissed.

B. **Due Process**[10]

In Claim Two, Dennis contends that his forced participation in SORT violates his rights to due process because: (a) it

---

[10] "No State shall . . . deprive any person of life, liberty, or property, without due process of law . . . ." U.S. Const. amend. XIV, § 1.

14

allows "Dennis to be labeled a violent sex offender," (Compl. ¶ 14); (b) it "has the potential to cause severe changes to the time to be served on his sentence," (id.); and, (c) "once an inmate is enrolled in the rehabilitation program, the inmate becomes subject to highly onerous conditions requiring his civil commitment after the inmate's sentence has been served" (id. ¶ 16). At the outset, it is appropriate to dispose of Claims Two(a) and Two(c) because Dennis has not demonstrated that his participation in SORT causes him to be labeled a violent sexual offender or results in his civil commitment after his incarceration. To the contrary, the record affirmatively shows that:

> Participation in the SORT program does not label or automatically deem an offender a SVP. The criteria used to classify an offender as [an] SVP are separate from the criteria used to refer offenders to the SORT program. In other words, being referred to or participating in the SORT program is not related to whether an offender is subject to civil commitment as an SVP.

(Coon Aff. ¶ 11.) Dennis has offered no proof to refute the showing made by Clarke. Accordingly, Claims Two(a) and Two(c) will be dismissed.

What remains then is Dennis's claim that, if he refuses to participate in SORT his sentence may be extended. Dennis, however, has identified no evidence that his lack of participation in SORT could cause him to serve more than the

15

eleven-year sentence that was imposed by the Circuit Court for the County of Albemarle. At best, Dennis suggests that his lack of participation in SORT could result in not earning or retaining the maximum amount of good time credit to reduce his term of imprisonment.

The Due Process Clause applies when government action deprives an individual of a legitimate liberty or property interest. Bd. of Regents of State Colls. v. Roth, 408 U.S. 564, 569 (1972). Thus, the first step in analyzing a procedural due process claim is to identify whether the alleged offending conduct affects a protected interest. Beverati v. Smith, 120 F.3d 500, 502 (4th Cir. 1997) (citing cases). "[I]t is well established that Virginia inmates do not enjoy a protected liberty interest in the rate at which they earn either Earned Sentence Credits or Good Conduct Allowances." Sydnor v. Mahon, No. 3:10CV780-HEH, 2012 WL 604039, at *4 (E.D. Va. Feb. 23, 2012) (citing Sazynski v. Clarke, No. 2:10CV156, 2011 WL 586973, at *3 (E.D. Va. Feb. 8, 2011); Puranda v. Johnson, No. 3:08CV687, 2009 WL 3175629, at * 5 (E.D. Va. Sept. 30, 2009); Martin v. Johnson, No. 7:08-cv-00249, 2008 WL 957869, at *4 (W.D. Va. Apr. 8, 2008); DeBlasio v. Johnson, 128 F. Supp. 2d 315, 330 (E.D. Va. 2000); Gaskins v. Johnson, 443 F. Supp.2d 800, 805 (E.D. Va. 2006)). Accordingly, Dennis cannot mount a procedural due process claim based on any decision of the VDOC

16

to reduce the rate at which he earns good conduct time if he refuses to participate in SORT.

To the extent that Dennis fears that prison officials might revoked vested good time credits, his claim does implicate a protected liberty interest. <u>Sciolino v. City of Newport News, Va.</u>, 480 F.3d 642, 653 n.9 (4th Cir. 2007) (citing <u>Wolff v. McDonnell</u>, 418 U.S. 539, 560-61 (1974)). Nevertheless, the Constitution guarantees only the following minimal process prior to revoking vested good time credits:

> (1) an impartial tribunal; (2) written notice of the charges prior to the hearing; (3) an opportunity to call witnesses and present documentary evidence; (4) aid from a fellow inmate or staff representative if the issues are complex; and, (5) a written statement by the fact finder describing the evidence relied upon and the reasons for taking disciplinary action.[11]

<u>Coor v. Stansberry</u>, No. 3:08CV61, 2008 WL 8289490, at *2 (E.D. Va. Dec. 31, 2008) (citing <u>Wolff</u>, 418 U.S. at 563-71.) Dennis has not shown that he will be deprived of any of the above procedural protections with respect to the revocation of any good time credits. Thus, Dennis's contention that he might be deprived of procedural due process in connection with the

---

[11] The Supreme Court has further stated "that the requirements of due process are satisfied if some evidence supports the decision by the prison disciplinary board to revoke good time credits." <u>Superintendent, Mass. Corr. Inst., Walpole v. Hill</u>, 472 U.S. 445, 455 (1985).

17

forfeiture of vested good time credits lacks merit and must be dismissed.[12]

Although not squarely presented, Dennis appears to contend that he is being denied due process simply because he is required to participate in a program for sex offenders. Dennis contends that the VDOC methodology for selecting him for SORT is flawed and fails to afford him the process the Constitution demands. Dennis, however, was convicted of multiple serious sexual offenses. He has yet to demonstrate that he has a protected liberty interest in avoiding participating in SORT. Thus, the Constitution does not guarantee any particular process prior to requiring his participation in SORT.[13]

## IV. CONCLUSION

The MOTION FOR SUMMARY JUDGMENT (ECF No. 9) will be granted. The claims will be dismissed. The SUPPLEMENTAL MOTION FOR PARTIAL SUMMARY JUDGMENT (ECF No. 19) will be denied as moot. The action will be dismissed.

---

[12] In any event, the contention upon which Claim Two (c) rests is premature because nothing has happened.

[13] The criminal process that led to Dennis's convictions for over a score of sexual offenses extinguished any liberty interest Dennis enjoyed in avoiding being labeled a sexual offender. See Renchenski v. Williams, 622 F.3d 315, 328 (3d Cir. 2010) (citations omitted) (internal quotation marks omitted) (observing that "prisoners who have not been convicted of a sex offense have a liberty interest created by the Due Process Clause in freedom from sex offender classification and conditions").

The Clerk is directed to send a copy of the Memorandum Opinion to counsel of record.

/s/ REP
Robert E. Payne
Senior United States District Judge

Richmond, Virginia
Date: August 17, 2016